UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN SAGARIA,

                            Plaintiff,

                v.

ORANGE COUNTY JAIL, *et al.*,

                            Defendants.

No. 20-CV-2287 (KMK)

OPINION & ORDER

---

Appearances:

Michael David Meth, Esq.
Meth Law Offices, PC
Chester, NY
*Counsel for Plaintiff*

Anthony Francisco Cardoso, Esq.
Orange County Attorney's Office
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiff John Sagaria ("Plaintiff") brings this Action pursuant to 42 U.S.C. § 1983 against the Orange County Jail (the "Jail"), the Orange County Sheriff's Department (the "Sheriff's Department"), and the County of Orange (the "County"; collectively "Defendants") for wrongful incarceration in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article 1 Section 6 of the New York State Constitution. (Compl. (Dkt. No. 1).) Before the Court is Defendants' Motion to Dismiss (the "Motion"). (Not. of Mot. (Dkt. No. 25).) For the following reasons, the Motion is granted.

I. Background

A. Factual Background

The following facts, drawn from Plaintiff's Complaint, are taken as true for the purpose of resolving the instant Motion.

Plaintiff is a businessman who has lived in Orange County, New York for over 25 years. (Compl. ¶ 12.) His primary source of income is the two businesses he owns, both of which he must be present to operate. (*Id.*) Plaintiff also is the plaintiff in a contentious divorce proceeding in the Supreme Court of Orange County, New York (the "state court"). (*Id.* ¶ 13.) On December 14, 2018, during a custody hearing related to this divorce proceeding, Plaintiff's ex-wife's counsel, Barbara Strauss, Esq. ("Strauss"), raised the issue of Plaintiff's unpaid spousal support. (*Id.* ¶ 14.) The state court denied Plaintiff's request for a hearing and offer of proof on the non-payment issue. (*Id.* ¶ 15.) Plaintiff was held in summary contempt of court for non-payment of spousal support, and the state court ordered his immediate detention. (*Id.*) The state court remanded Plaintiff to the Jail pursuant to an order of commitment. (*Id.* ¶ 17.) Plaintiff alleges that the state court set $25,000 as the payment required for Plaintiff to purge his contempt. (*Id.* ¶ 16.) The Court takes judicial notice of the order of commitment, which states that Plaintiff could purge his contempt by "paying the partial sum of $25,889.64 to C[ynthia] S[agaria]," and orders Plaintiff to be imprisoned for 30 days, "or until the purge sum of $25,889.64 is paid." (*See* Decl. of Anthony F. Cardoso in Supp. ("Cardoso Decl.") Ex. B ("Order of Commitment") (Dkt. No. 26-2).) *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not

for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").[1]

On December 17, 2018, Plaintiff paid $25,000 to Strauss by credit card. (Compl. ¶ 19.) Strauss subsequently issued a Letter of Release to the state court and brought the letter and payment confirmation to the Sheriff's Department. (*Id.*) The Sheriff's Department refused to release Plaintiff because the release letter did not come from the state court. (*Id.* ¶¶ 19, 20.) The state court refused to sign the release order. (*Id.* ¶ 21.)

On December 19, 2018, Plaintiff paid an additional $28,090.26 by credit card to the Sheriff's Department GOVPAY EXP Payment Service to satisfy the purge amount. (*Id.* ¶ 22.) This sum included $3,090.26 in fees. (*Id.* ¶ 23.) The Sheriff's Department charged Plaintiff's credit card. (*Id.*) Subsequently, the Sheriff's Department stated that it could accept only $10,000 via credit card. (*Id.* ¶ 24.) The Sheriff's Department stated that Plaintiff had to pay $25,000 in cash at the window of the Jail to be released. (*Id.* ¶ 26.) While Plaintiff's family and friends were gathering cash, he was advised by the state court that an additional $1,639.644 paid directly to Strauss would be required for release. (*Id.* ¶¶ 28, 30.) Plaintiff paid Strauss $1,639.44 in cash and was released on December 19, 2018 at 8:30 P.M. (*Id.* ¶¶ 30–31.) The following day, GOVPAY EXP credited Plaintiff's credit card the $28,090.26 previously paid. (*Id.* ¶¶ 22, 33.)

Plaintiff seeks compensatory and special damages—including for emotional injury and loss of liberty, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs. (*Id.* ¶ 34 & 10–11.)[2]

---

[1] Plaintiff does not appear to contest this payment figure. (*See generally* Pl.'s Mem.) Indeed, he incorporates it into his brief. (*See id.* at 3, 12.)

[2] Because the Complaint is not paginated, the Court refers where there are no paragraph numbers to the ECF-generated page numbers in the upper right-hand corner.

B.  Procedural Background

Plaintiff filed his Complaint on March 13, 2020.  (Compl.)  On September 28, 2020, Defendants submitted a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss pursuant to Rule 12(b)(6).  (Dkt. No. 21.)  On October 8, 2020, the Court ordered Plaintiff to respond to Defendant's pre-motion letter by October 13, 2020, (Dkt. No. 22), which Plaintiff did, (Dkt. No. 23).  On October 20, 2020, the Court adopted a briefing schedule.  (Dkt. No. 24.)  On November 20, 2020, Defendants filed their Motion To Dismiss.  (Not. of Mot.; Cardoso Decl. (Dkt. No. 26); Not. of Mot. on Behalf of Defs. ("Defs.' Mem.") (Dkt. No. 27).)  Plaintiff filed a memorandum of law in opposition to the Motion To Dismiss on December 18, 2020.  (Mem. of Law in Opp'n ("Pl.'s Mem.") (Dkt. No. 28).)  Defendants filed their Reply on January 5, 2021.  (Reply Mem. of Law in Further Supp. of Mot. To Dismiss on Behalf of the Defs. ("Defs.' Reply") (Dkt. No. 29).)

## II.  Discussion

A.  Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (citation and quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Id.* Specifically, the plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, the "purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (citation and quotation marks omitted). To decide the motion, the Court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and quotation marks omitted).

B. Analysis

1. Claims Against the Jail and the Sheriff's Department

The Jail and the Sheriff's Department argue that they are administrative arms of the County and cannot be sued independently under New York law. (Defs.' Mem. 12.) The Court agrees.

The Orange County Sheriff's Department is a municipal department of the County of Orange, State of New York. Sheriff's Office, *Sheriff's Office: Orange County, New York*, https://www.orangecountygov.com/1650/Sheriffs-Office (last visited September 24, 2021). The

5

Sheriff's Department is subdivided into multiple divisions. *Id.* The Orange County Jail is a subdivision of the Sheriff's Department. Orange County, *Corrections (Jail)*, https://www.orangecountygov.com/511/Corrections-Jail (last visited September 24, 2021). The Jail is responsible for operating and maintaining the County's correctional system. *Id.*[3]

Pursuant to Federal Rule of Civil Procedure 17, federal courts must look to state law when deciding whether a government entity may be sued. Fed. R. Civ. P. 17(b)(3) (providing that capacity to be sued is determined "for all . . . parties [except individuals or corporations] by the law of the state where the court is located"); *see also Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999) ("New York law governs the capacity of a police department to sue or be sued."); *Orraca v. City of New York*, 897 F. Supp. 148, 152 (S.D.N.Y. 1995) ("[T]he capacity of a governmental entity to sue or be sued is a question of state law."). "Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *McCloud v. Dzurenda*, No. 20-CV-6393, 2021 WL 1924181, at *3 (E.D.N.Y. May 13, 2021) (quoting *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012)); *see also Carr v. County of Sullivan*, No. 16-CV-06850, 2018 WL 3733952, at *2 n.6 (S.D.N.Y. Aug. 3, 2018) (noting that departments are "merely administrative arms of a municipality [that] do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued"); *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (holding that

---

[3] The Court may take judicial notice of the structure of the Orange County government because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 763 (S.D.N.Y. 2019) (citing *Kramer*, 937 F.2d at 774), *reconsideration denied in part*, No. 17-CV-9178, 2019 WL 2866113 (S.D.N.Y. July 2, 2019); *cf. Gjolaj v. Bureau of Citizenship & Immigr. Servs.*, 468 F.3d 140, 143 n.2 (2d Cir. 2006) (holding that a court may take judicial notice of "a fundamental change in the political structure and government of Albania").

"municipal departments in this State . . . are not amenable to suit, and no claims can lie directly against them"); *Hoisington v. County of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) (finding that "municipal departments like the Department of Social Services are not amenable to suit"). Neither the Sheriff's Department nor the Jail exist separate and apart from the County and, as a result, neither can be sued. *See Gleeson v. County of Nassau*, No. 15-CV-6487, 2019 WL 4754326, at *14 (E.D.N.Y. Sept. 30, 2019) (finding Nassau County Sheriff's Department and Nassau County Correction Center were not proper parties because they are administrative arms of Nassau County); *Carr*, 2018 WL 3733952, at *2 n.6 (holding that the Fallsburg Police Department cannot be sued because "[i]t is well-settled that departments that are merely administrative arms of a municipality do not have legal identity separate and apart from the municipality and, therefore, cannot sue or be sued"); *Campbell v. Sposato*, No. 15-CV-1958, 2015 WL 9267222, at *4 (E.D.N.Y. Nov. 17, 2015) (finding Nassau County Correctional Center was not a proper party because it was an arm of the Department of Sheriff, which was a Nassau County department), *report and recommendation adopted*, 2015 WL 9273951 (E.D.N.Y. Dec. 16, 2015); *Joseph v. Nassau Cnty. Corr. Ctr.*, No. 12-CV-4414, 2013 WL 1702162, at *3 (E.D.N.Y. Apr. 19, 2013) (same); *Polite*, 60 F. Supp. 2d at 216–17 (dismissing claims against the Clarkstown Police Department); *see also* N.Y. GEN. MUN. LAW § 2 (noting that counties are defined as "municipal corporations").

Thus, Plaintiff's claims against the Sheriff's Department and the Jail are dismissed with prejudice. This outcome does not "subject . . . Plaintiff to indefinite arbitrary detention." (Pl.'s Mem. 22.) Plaintiff may seek recourse against the County, which "has already been named as a defendant." *Umhey v. County of Orange*, 957 F. Supp. 525, 532 (S.D.N.Y. 1997).

2. Due Process

Plaintiff claims that the delay in his release violated his due process rights. (Compl. ¶¶ 49–51.) The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Plaintiff brings both substantive and procedural due process claims under the Fourteenth Amendment. To state a procedural due process claim, a plaintiff "must first establish that he enjoyed a protected liberty interest." *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998). If a plaintiff establishes such a protected interest, the next question is whether "the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). The Fourteenth Amendment guarantees "'more than fair process'; it 'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)). To state a substantive due process claim, Plaintiff must allege: (1) a valid liberty or property interest, (2) which Defendants infringed in an arbitrary or irrational manner. *See Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001). "The interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Southerland v. City of New York*, 680 F.3d 127, 152 (2d Cir. 2012) (quotation marks omitted).

Plaintiff alleges a valid liberty interest for both a procedural and substantive due process claim. Because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action[,] . . . commitment for

any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citation and quotation marks omitted). Here, Plaintiff alleges that he was wrongfully detained for 30 additional hours. (Compl. ¶¶ 51–53.) The Court assumes without deciding that improper detention for this amount of time can violate substantive due process. *See Lynch v. City of New York*, 335 F. Supp. 3d 645, 655 (S.D.N.Y. 2018) (holding unconstitutional the Department of Correction's practice of forcing detainees who had already paid bail to remain detained until a critical mass awaiting release formed). Thus, the key questions are (1) whether Plaintiff plausibly alleges that Defendants failed to use constitutionally sufficient procedures, and (2) whether Plaintiff's confinement was arbitrary or irrational. The Court concludes on both questions that Plaintiff has failed to state a claim.

### a. Procedural Due Process

Given that Plaintiff had a liberty interest in freedom from bodily restraint, the question is "whether the government deprived the plaintiff of that interest without due process," which examines "what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

### i. First Payment Attempt

Plaintiff claims that Defendants failed to use constitutionally sufficient procedures in delaying his release after the Jail received a letter from Strauss consenting to Plaintiff's release. (Pl.'s Mem. 10–11.) The Court disagrees.

The Complaint acknowledges that Plaintiff was detained pursuant to a commitment order after a finding of contempt. (*See* Compl. ¶¶ 15, 17.) Plaintiff does not challenge the facial

9

validity of this commitment order.  (*See generally id.*)[4]  Nor does he allege that he challenged the commitment order while he was detained.  (*See generally id.*; *see also* Pl.'s Mem. 13 (stating that Plaintiff "never challenged the order").)  Of course, Plaintiff was "free to raise . . . legal challenges . . . by seeking to have the commitment order vacated."  *Ngemi v. County of Nassau*, 87 F. Supp. 3d 413, 419 (E.D.N.Y. 2015).[5]  Absent such a challenge, Defendants were "bound to execute the valid order as it [was] written."  *Id*. (citing *Tornheim v. Eason*, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005) ("A sheriff is not empowered to review a facially valid court order; it is not within his scope of authority to question the legality of the provision in the [j]udgment."), *aff'd*, 175 F. App'x 427 (2d Cir. 2006)).  As a result, to the extent they acted consistent with the commitment order, Defendants are entitled to quasi-judicial immunity.  (*See* Defs.' Mem. 13.)  *See Fludd v. Fischer*, No. 10-CV-6603, 2012 WL 3749652, at *5 (W.D.N.Y. Aug. 28, 2012) ("Government officials carrying out a facially valid court order are entitled to immunity to suits for damages under § 1983."), *aff'd in part, vacated in part on other grounds, remanded*, 568 F. App'x 70 (2d Cir. 2014); *Tornheim*, 363 F. Supp. 2d at 677 (finding that a municipal official

---

[4] The Court notes that the order of commitment provided "how much [Plaintiff] should pay . . . in order to purge himself from contempt," which is one requirement for facial validity under New York law.  *See Garenani v. County of Clinton*, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008) (citing *Loeber v. Teresi*, 681 N.Y.S.2d 416, 419 (App. Div. 1998)); *see also* N.Y. JUD. LAW § 774(1) (requiring that a commitment order "specify the amount of the fine, and the duration of the imprisonment").

[5] Plaintiff alleges that the state court refused to sign the release order, (*see* Compl. ¶ 21; Pl.'s Mem. 11), and arbitrarily changed the purge conditions, (*see* Compl. ¶ 30; Pl.'s Mem. 2, 4, 10, 14).  The Court does not consider these claims because the state court is neither a defendant in this Action nor a County employee.  *See* N.Y. JUD. LAW § 39(6) ("[A]ll justices, judges, and nonjudicial officers and employees of the courts and court-related agencies of the unified court system . . . shall be employees of the state of New York . . . .").  For the same reason, the Court rejects Plaintiff's argument that the state court failed to allow the required ten-day notice before considering Plaintiff's ex-wife's contempt application.  (*See* Pl.'s Mem. 9.)

sued in his official capacity for executing a court order was "entitled to an absolute quasi-judicial immunity because his actions—undertaken in performance of his official duties—ha[d] an integral relationship with the judicial process"); *Respass v. N.Y.C. Police Dep't*, 852 F. Supp. 173, 177 (E.D.N.Y. 1994) (finding it "highly unlikely that the mere averment that the warden failed to look behind the facial validity of [the] plaintiff's commitment order would state a claim against the Department of Corrections").[6]

Plaintiff's claim thus turns on whether Plaintiff has plausibly alleged that Defendants acted beyond the scope of the commitment order. He has not. The commitment order allowed Plaintiff to purge his contempt by paying Cynthia Sagaria $25,889.64. (*See* Order of Commitment.) *See N.Y.C. Transit Auth. v. Transp. Workers Union of Am.*, 822 N.Y.S.2d 579, 589 (App. Div. 2006) (noting that a civil contemnor may end his or her incarceration by satisfying the purge conditions). Plaintiff's payment of $25,000 on December 17, 2019 was less than the required $25,889.64. (*See* Compl. ¶ 19; Order of Commitment.) Strauss's letter consenting to Plaintiff's release likewise did not require Plaintiff's release, because the commitment order did not specify that Plaintiff would be released upon consent by his ex-wife. (*See* Order of Commitment.) Because Plaintiff does not claim that Defendants violated the commitment order, he has not alleged that Defendants violated his due process rights by delaying his release after his first attempted payment. *See Ngemi*, 87 F. Supp. 3d at 419 (finding that where the sheriff was executing a facially valid commitment order by placing the plaintiff in custody, the plaintiff's complaint did not allege a valid procedural due process against any employee of the Sheriff's Office); *Pack v. Hynes*, Nos. 04-CV-574, 04-CV-2907, 2004 WL

---

[6] Plaintiff briefs only the issue of qualified immunity, which is not relevant to the issue of quasi-judicial immunity. As such, the Court does not address it. (*See* Pl.'s Mem. 22–23.)

11

3090592, at *2 (E.D.N.Y. Aug. 18, 2004) ("The superintendents of various New York State correctional institutions had custody of [the] plaintiff under a sentence and judgment of convictions [that were] valid on their face.  No valid claim is stated against them individually or together.").

Plaintiff cites *Town of Wilmurt v. Wright*, 171 N.Y.S. 230 (App. Div. 1918), to argue that Defendants would have been "entirely justified" in releasing Plaintiff due to his ex-wife's consent, (Pl.'s Mem. 10–11).  However, *Wright* is consistent with the Court's reasoning.  There, the parties were able "to agree upon [a] settlement, which would release the defendant from imprisonment." *Wright*, 171 N.Y.S. at 232.  However, the defendant was released only because "an order was made discharging the defendant." *Id.*  In other words, the defendant in *Wright* received a court order reversing a prior detention order.  *See also First Mariner Bank v. Resol. L. Grp., P.C.*, No. 12-CV-1133, 2014 WL 1681986, at *3 (D. Md. Apr. 28, 2014) (ordering that the defendants had purged civil contempt).  Defendants are not liable merely because Plaintiff failed to seek the same.

ii.  Second Payment Attempt

Plaintiff argues that the County violated his due process rights by refusing to release him after he attempted to pay the full purge amount via credit card.  (Pl.'s Mem. 11–12.)  The Court disagrees.[7]

---

[7] The Court assumes without deciding that Plaintiff enjoys due process protections equivalent to those provided by the Eighth Amendment Excessive Bail Clause, even though he was detained for civil contempt.  *Cf. U. S. ex rel. Goodman v. Kehl*, 456 F.2d 863, 868–69 (2d Cir. 1972) ("How far, in light of the rather obvious thrust of the Eighth Amendment toward criminal prosecutions, these principles apply to orders for civil contempt whose purpose is not to punish but to secure obedience to a court's processes may be a different question.").

12

Numerous courts have held that there is no "constitutional right to a certain type of bond." *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998); *see also Guam v. Tuncap*, 2011 Guam 24 ¶ 12 (noting that "other courts have held that there is no established right to a certain type of bond"); *Campbell v. Johnson*, No. 06-CV-365, 2006 WL 3408177, at *2 (N.D. Fla. Nov. 27, 2006) (holding that "there is no established constitutional right to a certain type of bond"); *cf. Holland v. Rosen*, 895 F.3d 272, 292 (3d Cir. 2018) (finding it unlikely "that the Excessive Bail Clause guarantees a right to monetary bail"). The history of New York's bail law is consistent with this principle. New York's law was "intended to reform the restrictive bail scheme" and "improve the availability of pretrial release." *People ex rel. McManus v. Horn*, 967 N.E.2d 671, 674 (N.Y. 2012). This law allows a court to require that "bail be posted in any one of three or more . . . forms." N.Y. CRIM. PROC. LAW § 520.10(2)(b). The statute lists nine possible bail forms, and "[c]redit card or similar device" is only one of the options. *Id.* § 520.10(1). Thus, even in a bail regime designed to improve the availability of pretrial release, a criminal defendant is not entitled to pay bail by credit card. *See, e.g.*, *People v. Disimile*, 142 N.Y.S.3d 319, 322 (County Ct. 2021) (setting bail as "$30,000 cash, $60,000 insurance company bond or $200,000 partially secured appearance bond with a 10% cash component"). In light of this history, it is unsurprising that courts have rejected claims that refusing to accept credit card payment for bail is unconstitutional. *See, e.g.*, *Wells v. Ward*, 470 F.2d 1185, 1185 (10th Cir. 1972) (affirming summary judgment against a plaintiff who alleged that "the jailer refused to accept his bail bond credit card"); *see also Kinsey v. Ohio*, No. 20-3315, 2021 WL 1100494, at *1 (6th Cir. Jan. 11, 2021) (summary order) (affirming summary judgment against a plaintiff who claimed that he was "was not permitted to pay the bail with a credit card because cash was the only acceptable method of payment"); *cf. Keele v. City of St. John*, No. 10-CV-811, 2011 WL

453254, at *3, *4 (E.D. Mo. Feb. 4, 2011) (dismissing on statute of limitations grounds the plaintiff's constitutional claim that the defendants "refused to take checks or credit cards as payment for bail").

Finally, the Sheriff's Department did not violate Plaintiff's constitutional rights by incorrectly advising him that he could pay the full purge amount via credit card. Simply put, such miscommunications do not qualify as constitutional fouls. *See Blackburn v. Wash. Dep't of Soc. & Health Servs*., No. 11-CV-5385, 2011 WL 3563741, at *2 (W.D. Wash. Aug. 12, 2011) (finding that, where "a miscommunication occurred over the course of one weekend," this "regrettable mistake" did not "amount[] to a violation under . . . the Constitution because it was unintentional and brief"), *aff'd*, 472 F. App'x 569 (9th Cir. 2012); *cf. Brown v. Strickland*, No. 09-CV-3248, 2009 WL 3414344, at *1 (S.D. Tex. Oct. 20, 2009) ("Neither simple negligence nor gross negligence is enough for constitutional liability. A simple mistake does not violate the Constitution." (citation omitted)).

Because Defendants' refusal to allow Plaintiff to pay more than $10,000 via credit card towards purging his contempt does not rise to the level of a constitutional violation, Plaintiff's procedural due process claim must be dismissed.[8]

---

[8] Plaintiff's false imprisonment claim, (*see* Compl. ¶ 52), is dismissed for the same reason. Federal courts look to New York law to determine the elements of a cause of action for false imprisonment. *See Tobias v. County of Putnam*, 191 F. Supp. 2d 364, 375 (S.D.N.Y. 2002). Under New York law, "where a facially valid order issued by a court with proper jurisdiction directs confinement, that confinement is privileged and everyone connected with the matter is protected from liability for false imprisonment." *Aponte v. Fischer*, No. 14-CV-3989, 2020 WL 1911190, at *10 (S.D.N.Y. Aug. 20, 2020) (citing *Holmberg v. County of Albany*, 738 N.Y.S.2d 701, 703 (App. Div. 2002)).

b.  Substantive Due Process[9]

The Court considers whether Plaintiff's prolonged detention was arbitrary.  *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised."  *Cunney v. Bd. of Trs.*, 660 F.3d 612, 626 (2d Cir. 2011) (citation omitted).  "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity."  *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (citation and quotation marks omitted).

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  An individual who has not been adjudged guilty of a crime, like Plaintiff, may therefore only be subjected to the restrictions of a detention facility so long as they "do not amount to punishment."  *Fusco v. County of Putnam*, No. 15-CV-08132, 2018 WL 1889070, at *7

---

[9] While a plaintiff may simultaneously assert liberty interests based on procedural and substantive due process protection, if the Court finds that "the claim for substantive due process is subsumed by" the procedural due process claim, "it must be dismissed."  *Rother v. NYS Dep't of Corr. & Cmty. Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013); *see also Cherry v. N.Y.C. Hous. Auth.*, 15-CV-6949, 2017 WL 4357344, at *29 (E.D.N.Y. Sept. 29, 2017) ("Plaintiff fails to state a claim for a violation of substantive due process because [that] claim is based on the same facts as his procedural due process claim."); *Ratajack v. Brewster Fire Dep't, Inc.*, 178 F. Supp. 3d 118, 147 (S.D.N.Y. 2016) (holding that "the overwhelming majority of [the plaintiff's] claims fall into ambit of other provisions of the Constitution," including the Due Process Clause, "thereby closing off [the plaintiff's] ability to seek relief by invoking the concept of substantive due process"); *Monko v. Cusack*, No. 11-CV-1218, 2013 WL 5441724, at *3 (N.D.N.Y. Sept. 27, 2013) (dismissing substantive due process claim where it "overlaps both his procedural due process claim and his retaliation claim" (citing *Rother*, 2013 WL 4774484, at *14)).  Here, as Plaintiff relies on the same facts in both claims, Plaintiff's substantive due process claim is subsumed by his procedural due process claim, and is dismissed on this independent basis.

(S.D.N.Y. Apr. 18, 2018) (citing *Bell,* 441 U.S. at 536). The Second Circuit has recognized that in assessing whether prison restrictions imposed on individuals without criminal convictions comport with substantive due process, "a court must decide whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 61 (2d Cir. 2017) (alterations omitted) (quoting *Bell,* 441 U.S. at 538).[10]

When executive action "infringes a protected right, a plaintiff must show not just that the action was literally arbitrary, but that it was 'arbitrary in the constitutional sense.'" *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005) (citation omitted). In other words, only conduct that "shocks the conscience" will form the basis for a substantive due process violation for executive action. *Id*. In the Second Circuit, "whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *Id.*

Plaintiff claims that his release was delayed 30 hours. (Compl. ¶ 53.) This detention period is distinguishable from *Lynch*, which Plaintiff cites to argue that prolonged detention may violate due process. (Pl.'s. Mem. 16–17.) In *Lynch*, the court found that a city violated the plaintiff's substantive due process rights with its practice of forcing detainees who had already paid bail to remain detained until a critical mass formed, with no justification other than convenience. 335 F. Supp. 3d at 655. Here, unlike in *Lynch*, Plaintiff has not alleged that Defendants have a formal policy of prolonging the release of incarcerated individuals by transferring them elsewhere. (*See generally* Compl.) Nor has Plaintiff alleged that Defendants

---

[10] Although the Second Circuit was specifically addressing the substantive due process rights of pre-trial detainees in *Milling* , the reasoning appears to apply with equal force to Plaintiff. *See Fusco*, 2018 WL 1889070, at *5 n.3 (analogizing the due process analysis for pre-trial detainees to the due process analysis for incarcerated civil contemnors).

16

deprived him of the ability to purge contempt. *See supra* (discussing the absence of a constitutional right to make bail payments via credit card). Therefore, the Sheriff Department's decision to delay Plaintiff's release after it mistakenly accepted his payment does not rise to a level that is "arbitrary in the constitutional sense.'" *O'Connor*, 426 F.3d at 203. Nor does a credit card cap "shock[] the conscience." *Id.*; *see also Davidson v. City of Bridgeport*, 487 F. App'x 590, 592 (2d Cir. 2012) (summary order) (holding that to establish "egregious and conscience-shocking" behavior, the plaintiff must show that the municipality "engaged in deliberate malfeasance"). Thus, Plaintiff's Fourteenth Amendment substantive due process claim is dismissed.

### 3. Eighth Amendment

Next Plaintiff claims that the delay in release time violated his Eighth Amendment rights. (Compl. ¶¶ 49–51.) Because Plaintiff was incarcerated due to an official order of commitment for failure to pay spousal support and not a criminal conviction, his delayed release claim falls under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). While a detainee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner," *id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)), as discussed, Plaintiff has failed to allege a Due Process claim. Further, because Plaintiff was not a criminal defendant, it is unclear that he is protected by the Eighth Amendment Excessive Bail Clause. *See Kehl*, 456 F.2d at 868–69. Even if he were, Plaintiff alleges that the state court set his purge amount, (*see* Compl. ¶ 16; *see also* Order of Commitment), and Plaintiff

does not name the state court as a defendant, *see supra* Footnote 5. Plaintiff's Eighth Amendment claim is therefore dismissed.[11]

---

[11] Because Plaintiff fails to allege a violation of his constitutional rights, he cannot maintain a *Monell* claim. *See Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (listing as a requirement of a *Monell* claim that the plaintiff establish "deprivation of a constitutional or statutory right"); *see also Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) ("If [no individual defendant] inflicted a constitutional injury on [the plaintiff], 'it is inconceivable that the [municipality] could be liable to [the plaintiff].'" (alterations omitted) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).

Even if he had pleaded a violation of his constitutional rights, Plaintiff could not establish a *Monell* claim because he has not alleged "that an official policy of the municipality caused [his] constitutional injury." *Roe*, 542 F.3d at 36. (*See generally* Compl.) This requirement for *Monell* liability reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights."). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). Here, the only valid defendant is the County. Absent an alleged policy or custom that caused constitutional harm, Plaintiff cannot maintain a *Monell* claim against the County. *See Kinsey v. Ohio*, No. 17-CV-982, 2020 WL 1066633, at *1, *4 (S.D. Ohio Mar. 5, 2020), *aff'd*, No. 20-3315, 2021 WL 1100494 (6th Cir. Jan. 11, 2021) (dismissing the plaintiff's claim because his "amended complaint fail[ed] to allege that any . . . [c]ounty custom or official policy led to a violation of his constitutional rights" where the plaintiff "offered to pay the . . . bail amount by credit card, but . . . [the] [c]ounty refused to accept any form of payment other than cash").

### III.  Conclusion

For the foregoing reasons, Moving Defendants' Motion To Dismiss is granted.  Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  Failure to file an amended complaint could result in dismissal of this case with prejudice.  The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 25).

SO ORDERED.

DATED:   September 24, 2021
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE